UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT E. SANCHEZ, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:05-0154 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| CITY OF FRANKLIN, and ) | |
| JAMES JOHNSON in his official ) | |
| and personal capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This matter comes before the court on a Motion for Partial Summary Judgment filed by the defendants (Docket No. 22), to which the plaintiff has responded (Docket No. 30), and the defendant has replied (Docket No. 32). For the reasons discussed herein, the defendants' motion will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Robert Sanchez worked as the purchasing manager for defendant City of Franklin, Tennessee from August 19, 2002 through December 18, 2003.[1] The purchasing division was newly created when the plaintiff began his employment in 2003, and the plaintiff reported directly to defendant James Johnson, the city administrator. Mr. Sanchez's job required him to purchase supplies, equipment and services; auction off surplus, abandoned, impounded,

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's Amended Complaint (Docket No. 1, Ex. 4 attach. Compl.), the plaintiff's Memorandum in Opposition to the Defendants' Motion for Partial Summary Judgment (Docket No. 48), and the plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Docket No. 31).

1

and seized property; manage the mail room and the phone system; and obtain cost estimates for use in the city's budget preparations. In order to obtain those cost estimates, Mr. Sanchez was responsible for preparing and issuing bidding requests to contractors and subcontractors. When necessary, Mr. Sanchez was required to prepare items for city board meetings. Additionally, Mr. Sanchez was to coordinate with other city employees, including the city administrator, in evaluating the bids and to administer the contracts after they had been signed and implemented.

During his employment, Mr. Sanchez alleges that he uncovered violations of Tennessee law in the purchasing department. Mr. Sanchez has not been more specific than to allege that those violations involved Tennessee's Municipal Purchasing Law of 1983, T.C.A. § 6-56-303. Nor has Mr. Sanchez provided much detail as to how he "blew the whistle" on such violations. He appears to have first alerted defendant Johnson about the violations via office memoranda. Subsequently, on July 7, 2003, Mr. Sanchez alerted Alderman Steve Smith about the violations via e-mail, and on August 5, 2003, he alerted the City Finance Committee about the violations in a public meeting. Finally, on August 21, 2003, the plaintiff informed city attorney Doug Berry about the violations by letter. Unfortunately, Mr. Sanchez has not enlightened the court as to the specific violations of law at issue in this case.

On December 18, 2003, Mr. Johnson sent Mr. Sanchez a memorandum outlining Mr. Sanchez's most recent ninety-day performance evaluation which, according to Mr. Johnson, was highly unsatisfactory. In the memorandum, Mr. Johnson gave Mr. Sanchez the choice between resigning or being terminated with notice pursuant to the unsatisfactory evaluation. Mr. Sanchez resigned effective March 5, 2004, though he ceased working on January 23, 2004.

On January 31, 2005, Mr. Sanchez filed an action in state court alleging: (1) retaliatory

2

Case 3:05-cv-00154   Document 33   Filed 10/25/06   Page 2 of 12 PageID #: 181

discharge in violation of Tenn. Code Ann. § 50-1-304 (The Tennessee Public Protection Act); (2) retaliatory discharge in violation of Tennessee common law; and (3) discharge in violation of his First Amendment rights under 42 U.S.C. § 1983. On February 25, 2005, the defendant removed the case to this court. On August 4, 2006, defendants City of Franklin and James Johnson filed a motion for partial summary judgment on (1) the plaintiff's Tennessee Public Protection Act claim solely as to Mr. Johnson, (2) the plaintiff's common law retaliatory discharge claim as to both defendants, and (3) the plaintiff's § 1983 claim as to both defendants. (Docket No. 22.)

## ANALYSIS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether

3

there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's claims.

## II.     Tennessee Public Protection Act

The Tennessee Public Protection Act ("TPPA") states: "No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(a). The statute provides a cause of action

4

for employees so discharged "against the employer," Tenn. Code Ann. § 50-1-304(d), and defines "employer" as "the state, or any municipality, political subdivision, or any other entity thereof." Tenn. Code Ann. § 50-1-304(g)(2).

As such, the TPPA does not provide a cause of action for an employee against an individual supervisor, such as Mr. Johnson. *See Smith v. Harriman Utility Bd.*, 26 S.W.3d 879, 885 (Tenn. Ct. App. 2000) (holding that a supervisor with the authority to hire and fire was not an "employer" under the TPPA and, therefore, could not be sued in his individual capacity under that act); *Wooley v. Madison County*, 209 F. Supp. 2d 836, 845 (W.D. Tenn. 2002) ("Tennessee courts have explicitly held that supervisors, even if they have the exclusive right to hire and fire employees, are not employers under the TPPA.") (citing *Baines v. Wilson County*, 86 S.W.3d 575, 582 (Tenn. Ct. App. 2002)). Therefore, the court must grant summary judgment to Mr. Johnson as to the plaintiff's TPPA claim.

### III. Retaliatory Discharge Under Tennessee Common Law

The Tennessee Governmental Tort Liability Act ("GTLA") provides:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a). This provision granting immunity is subject to waiver and, elsewhere, the GTLA provides the basis for that waiver. However, it provides no basis for waiver of immunity for the tort of retaliatory discharge. In fact, Tennessee courts have held specifically that, "under the GTLA, a governmental entity is immune from liability for the common law tort of retaliatory discharge." *Baines v. Wilson County*, 86 S.W.3d 575, 579 (Tenn. Ct. App. 2002) (citing *Montgomery v. Mayor of City of Covington*, 778 S.W.2d 444, 445 (Tenn.

5

Ct. App. 1989); *see also Williams v. Williamson County Bd. of Educ.*, 890 S.W.2d 788, 790 (Tenn. App. 1994) ("[S]overeign immunity is a complete defense for a governmental entity to a retaliatory discharge claim.") On that basis, the defendants have pointed out, and the plaintiff has accepted, that the plaintiff has no claim under the tort of retaliatory discharge against the City of Franklin. Because a suit against an official in his or her official capacity is functionally equivalent to a suit against the government entity itself, the City of Franklin's immunity extends to Mr. Johnson in his official capacity. *Smith v. Harriman Utility Bd.*, 26 S.W.3d at 885. Additionally, there can be no basis for liability against Mr. Johnson in his individual capacity because, as discussed above, Mr. Johnson was not the plaintiff's employer. *See Baines*, 86 S.W.3d 575, 581-83 (Tenn. Ct. App. 2002) (holding that a supervisor cannot be held individually liable for retaliatory discharge). Accordingly, the court will grant summary judgment as to the plaintiff's retaliatory discharge claim with regard to both defendants.

**IV.     First Amendment Claim**

Finally, the court will address the plaintiff's First Amendment claims brought under 42 U.S.C. § 1983. Section 1983 provides a federal cause of action for violations of constitutional rights by public officials acting under color of law. *Lomaz v. Hennosy*, 151 F.3d 493, 500 (6th Cir. 1998). To assert a valid § 1983 claim, a plaintiff must demonstrate (1) a deprivation of a right secured by the Constitution (or a law of the United States), and (2) that the deprivation was caused by someone acting under color of state law. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citing *Perry v. McGinnis*, 209 F.3d 597, 603 (6th Cir. 2000). Because the plaintiff

6

has not shown the deprivation of a constitutional right, his § 1983 claim must fail.[2]

The plaintiff alleges that his termination from public employment deprived him of his right to free speech as guaranteed by the First Amendment. The First Amendment does protect public employees from termination in retaliation for protected speech. *Connick v. Myers*, 461 U.S. 138, 145 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968) ("[t]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected") (quoting *Keyishian v. Board of Regents*, 385 U.S. 589, 605-606 (1967)). However, not all speech is protected speech. The state maintains the ability to fire employees for a wide variety of verbal conduct. As the Supreme Court held in *Connick*, 461 U.S. at 146, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to

---

[2]Mr. Johnson asserts the affirmative defense of qualified immunity against the plaintiff's § 1983 claim. Because the plaintiff has not identified the deprivation of a constitutional right, the court need not analyze the second element of the defense. *See Silberstein v. City of Dayton,* 440 F.3d 306, 320 (6th Cir. 2006). However, the court will note that the plaintiff has failed to meet (or even acknowledge) its burden to allege conduct amounting to deprivation of a "clearly established" constitutional right. *See Dominique v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987); *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002) ("The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity.") Instead, the plaintiff has insisted that the inquiry involves Mr. Johnson's "knowledge and motives" which he characterizes as "jury questions, not suitable for resolution" at this stage. (Docket No. 30 at p. 4-5.) That is incorrect. *See Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) ("The relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful . . . .") Although summary judgment on qualified immunity grounds can be "inappropriate when conflicting evidence creates subordinate predicate factual questions," *Hamilton*, 281 F.3d at 531, the plaintiff must provide some factual evidence in order for such a dispute to exist. Even if the court were to determine that a constitutional deprivation had taken place in this case, it would be hard pressed to find that the deprivation was "clearly established" for the lack information provided by the plaintiff as to the conduct at issue. Of course, because the court finds that no constitutional deprivation took place in this case, the question is moot.

7

review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Accordingly, the Sixth Circuit has acknowledged that, "[w]hile public employees may not be required to sacrifice their First Amendment free speech rights in order to obtain or continue their employment, a state is afforded greater leeway to control speech that threatens to undermine the state's ability to perform its legitimate functions." *Rodgers*, 344 F.3d at 596 (citing *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 475 n. 21 (1995) (internal citations omitted).

The Supreme Court has instructed courts to engage in a three-step inquiry to determine whether a public employer has violated the First Amendment through an adverse employment action. First, the court must decide whether the speech at issue addressed a matter of public concern. *See Connick*, 461 U.S. at 143. Second, the court must weigh the public employee's interest, as a citizen, in "commenting on matters of public concern" against the interest of the state, as an employer, in "promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. Third, the court must determine "whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee." *Rodgers*, 344 F.3d at 596 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1997).

### A. A Matter of Public Concern

The court must first determine whether the plaintiff's speech addressed a matter of public concern. In so doing, the court must consider "the content, form, and context of a given statement, as revealed by the whole record." *Rodgers*, 344 F.3d at 596 (quoting *Connick*, 461 U.S. at 147-48); *see also Langford v. Lane*, 921 F.2d 677, 680 (6th Cir. 1991). Whether or not

8

the speech involves a "matter of public concern" turns on whether it "involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government," *Rodgers*, 344 F.3d at 596 (quoting *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001)). Protected speech under this analysis "includes informing the public that a governmental entity failed to discharge its governmental responsibilities, or bringing to light actual or potential wrongdoing or breach of public trust." *Rodgers*, 344 F.3d at 596 (quoting *Connick*, 461 U.S. at 148). In contrast, "internal personnel disputes or complaints about an employer's performance" do not implicate the First Amendment in employee discharge cases. *Brandenburg*, 253 F.3d at 898. In other words, if the plaintiff spoke as a citizen, he should be able to pass this hurdle. However, if he spoke pursuant to his duties as an employee, then he has failed.

In a recent decision, *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1959-61 (May 30, 2006), the Supreme Court addressed whether a government employee, expressing views pursuant to his duties as an employee, is protected by the First Amendment. In *Garcetti*, the plaintiff, a supervising deputy district attorney, alleged that he was fired for expressing doubts regarding the accuracy of an affidavit used to obtain a search warrant. *Id*. at 1955-56. The plaintiff first wrote a memorandum discussing his misgivings regarding the affidavit and later testified before a trial court concerning those misgivings. *Id*. Reasoning that, "the controlling factor is that . . . [the plaintiff's] expressions were made pursuant to his duties," the Court held that those expressions were not protected by the First Amendment. *Id*. at 1959-1960. The Court based its decision on the fact that the plaintiff "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case,"and adopted the rule that, "when public

9

employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Id*. at 1960.

The *Garcetti* decision did not purport to tell lower courts when statements made by a government employee have been made "pursuant to" his or her job duties. *Id*. at 1961. To the contrary, because the parties in *Garcetti* did not dispute that the statements had been made "pursuant to" the plaintiff's job duties, the Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id*. The Court did provide some guidance, however. It stated that the "proper inquiry is a practical one," and that formal job descriptions should not be dispositive, on the basis that job descriptions "often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties." *Id*.

Neither party has provided the court with any guidance as to what the plaintiff's practical job duties were in this case. Instead, they have each relied upon formal job descriptions, notwithstanding that the Supreme Court does not consider such descriptions to be overwhelmingly important in cases such as this one.[3] In fact, the court would have very little to

---

[3]In light of the fact that both the defendants and the plaintiff discussed the *Garcetti* opinion in their respective briefings, it sincerely puzzles the court that neither attempted to demonstrate what the plaintiff's practical job functions were in this case. It is especially troubling that, in the face of the defendants' misguided reliance on official job descriptions in their own briefings, the plaintiff's counsel would concede the issue without delving into the factual record.

10

rely upon in this inquiry had plaintiff's counsel not admitted that "Mr. Sanchez was speaking both 'pursuant to [his] official duties . . .' and as a concerned citizen" when making the expressions at issue. (Docket No. 30 at p. 5.) Although *Garcetti* does not purport to say exactly when an expression is and is not "pursuant to" official duties, it does stand manifestly for the proposition that a government employee *cannot* speak both pursuant to official duties and as a concerned citizen. In *Garcetti*, the Supreme Court was very clear that, "when public employees make statements pursuant to their official duties, [they] are not speaking as citizens for First Amendment purposes." Because the plaintiff has admitted that he was speaking pursuant to his official duties when he made the expressions at issue, the court must conclude that the plaintiff's speech was not a matter of public concern and, therefore, is not protected by the First Amendment.[4]

---

[4] Additionally, the court notes that the plaintiff has failed to allege that the proposed First Amendment violation was either (1) executed pursuant to a municipal custom, policy or practice, or (2) directed by a municipal officer with final policy-making authority, as required to obtain relief from a municipality for any cause of action under § 1983. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monnell v. Dept. of Social Services*, 436 U.S. 658, 690-95 (1978). On that basis, even if the plaintiff had demonstrated a First Amendment violation, he would not have pled a viable cause of action against the City of Franklin under § 1983.

11

## CONCLUSION

For the reasons stated herein, the defendants' Motion for Partial Summary Judgment will be granted. The plaintiff's claim under the Tennessee Public Protection Act will be dismissed as to Mr. Johnson, and his claims for retaliatory discharge under Tennessee common law and for violation of his First Amendment Rights under 42 U.S.C. § 1983 will be dismissed as to both defendants. The only issue remaining for trial is the plaintiff's Tennessee Public Protection Act claim against the City of Franklin.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge